In Re. Catalyst Managerial Service, 162653. Ms. Sun. Good morning, Your Honors. May it please the Court, my name is Charlene Sun of King & Spalding. We are counsel to the intervener appellant in this case, Libya-Africa Investment Portfolio, or LAP, which is an arm of the Libyan Sovereign Wealth Fund. The motion before the Court today is LAP's motion for an immediate stay of the District Court's order granting the 1782 application of Petitioner CMS. A stay is appropriate in this case, Your Honors, because there is a risk of irreparable harm to LAP. Without a stay, the appeal has a likelihood of success, a stay would result in no substantial injury to CMS, and the public interest factors favor a stay. To begin, LAP does face irreparable harm absent a stay. As this Court has held, irreparable harm occurs where there is a substantial possibility that the parties may not be placed back in the positions they previously occupied absent equitable relief. That is the case here. If the banks produce these documents before LAP's appeal is resolved, even if this Court reverses or vacates the District Court's judgment, no court can erase the knowledge that CMS has obtained from the documents. The numbers it protected wouldn't erase. That is correct, Your Honor. It prevents Catalyst from, or CMS, from using the documents or information that derives from the documents in connection with any other litigation. Is that correct? That is true, Your Honor. It prevents CMS from taking the documents and using them as a basis for any further lawsuits that it may choose to bring, perhaps in other jurisdictions. What I don't believe the protective order does or can do is prevent CMS from using the information it obtains from the documents in assessing its litigation strategy against LAP. There would be no way for LAP to be able to tell whether that information was used in developing a litigation strategy. Why was the discovery order erroneous? Your Honor, we submit that the discovery order was erroneous based on the District Court's misapplication of several of the discretionary factors set forth in the case of Intel v. AMD, only two of which I will focus on in the time that we have today. First, this discovery did not need to be obtained from banks in the United States. What CMS seeks is information concerning LAP's profits that were made during the relevant period. That information could have been obtained directly from LAP through the U.K. proceeding. We believe the District Court erred by focusing only... It's really different to obtain documents from banks rather than from a party. Isn't that useful to know or to be able to confirm whatever records you get from the other party by having a subpoena served on banks that are prepared and willing and able to respond to the subpoena and just to see, cross-check, check, and confirm the records? Well, Your Honor, first we want to mention that there is... that financial statements have already been provided in the U.K. proceeding. If I can just contradict something. Aren't you just contradicting yourself because you say they could have gotten it from us? But you're saying if they had gotten it from you, they'd know it. You're saying the irreparable harm is they're not allowed to know what's in these documents. But you say they could have gotten them from us. We would have given them to them. Yes, Your Honor. It actually leads me to... Did you tell the District Court we'll give it to them? I'm sorry, Your Honor, did we... Did you tell the District Court we'll give them these things so they don't have to ask the banks for them? We did tell the District Court that this information, specifically information concerning lapsed profits made during the relevant period, is available to them through the U.K. proceeding and has partially been given to them. If I may, there was a second point that I wanted to make with respect to... I interrupted your answer. Keep going. The second point that we wanted to make with respect to the District Court's order was that the scope of this discovery is extraordinarily broad. It is unduly intrusive, and it is disproportionate to the needs of the case. As Judge Caproni... We wouldn't have given it to them. You're saying we wouldn't have given them. It's an appropriate, excessively broad discovery. Your Honor, we would not have given them this scope of information because we don't believe this scope of information actually... most of it actually doesn't help them quantify their lost profits in the U.K. litigation, which is their stated purpose for the discovery. Much of what they're seeking is basic wire transfer information. And, you know, I will just remind the Court that this is very, very broad discovery. This is discovery concerning every wire transfer made or received by lap or any of 21 alleged affiliates, none of whom are parties to the U.K. litigation, over a seven-year period from 16 banks. And as Judge Caproni recognized in later proceedings in the district court, this discovery is going to pull in a lot of DREC that CMS cannot use for purposes of quantifying... Aside the DREC, though, or what you described as DREC, there is a category of discovery of documents that seem to overlap. That is, there are documents that your client is prepared to produce itself in the U.K. litigation, and those documents would overlap with documents that the banks are being asked to produce pursuant to subpoena. Is that correct? We would actually submit that the nature of the information is slightly different. Documents. Are there documents that are being requested pursuant to the subpoena that you are prepared, in the U.K. litigation, to produce? I understood your answer to Judge LaValle to be yes, but I want to confirm that. You hesitated. The reason I hesitate is because we see a distinction between the documents and the information. So if I may, the basic wire transfer information that is being sought here through the 1782 proceedings is only going to show very basic information concerning each transaction. So, for example, the sender, the recipient, the amount, and the banks and intermediary banks where the transfer went. What it will not show, and what this information is not going to show, is whether any of the transfers that show up in these documents were actually reflective of profits made by LAP, and, more importantly, whether they are reflective of profits made by LAP that are attributable to the services that CMS allegedly provided. So, for that reason, we believe that this information is overbroad. It's not targeted to the stated purposes of the discovery. And if CMS requires information concerning LAP's profits, that is information that we have that we can turn over to them through the U.K. proceeding. For example, through our financial statements, which will show, on a consolidated basis, exactly which of those transfers resulted in profits to LAP. Thank you very much. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. My name is Nazi Modiri, Counsel for Catalyst Managerial Services, the appellee. Your Honors, there's no basis for a stay pending the appeal here. LAP is not likely to succeed on the merits of this appeal. There's no irreparable injury to LAP. The only injured party will be CMS here, and the public policy weighs against granting the stay here. With respect to the merits of the appeal, yes, it's been appealed on an expedited basis. No, but is there a schedule? Do we know when it's going to be argued? I don't know when it's going to be argued, but the reply brief will be submitted by November 17th. And the trial is still set for April? Right, the end of April through the beginning of May for four weeks. Your Honors, going back to the merits of the case. Assuming you got a prompt decision on the appeal, would that prejudice your preparation for this trial? I mean, it's still some months. Yes, it would. It would be argued until the trial, which is, what, March? Right. The trial is set in the end of April. There is going to be prejudice to CMS here because there's discovery deadlines in the England case, and the first discovery deadline is set for September 30th. That's for a standard disclosure. Basically what that is is each side submits a list of the documents that they will intend to rely on that is relevant to their case. This deadline is fast approaching, and should the court grant the stay, CMS will not be able to include the documents that the banks have already produced on its list that CMS intends to rely on. Is there any way for CMS to ask for an extension of that deadline? Yes. CMS can ask for an extension, but the problem is if we delay the standard disclosure, that will have a trigger effect where all of the other discovery deadlines will be delayed, and I've been advised by English counsel that the four-week trial date set in the end of April of next week will likely move, and it will probably be delayed by another eight months to a year because it's hard to find a four-week blocked date for this trial. That's the substantial injury here. So right now you may be wondering, all of the banks have produced fully except for one bank, and so at this point lapse points about having information released is not really an irreparable injury. You've already gotten the documents, you're saying? We've already gotten 95% of the documents, and so should the court grant the stay, basically CMS is not going to be able to move forward with preparing for its case, and that goes to Judge Corman's point, which is we need time to actually process the documents, look through them, have them reviewed by forensic accountants, figure out who these transfers are made, whether that information, whether a particular transfer related to CMS's contribution to one of lapse businesses, and so this takes time to review these wire transfers and translate them into actual tangible information, and so should the court grant the stay, CMS at this point will be precluded from those few months of preparing for its case. The answer is that we can seek a deferral of this first stage ruling, the first stage termination of discovery. You can seek it, but you don't necessarily get it. I'm sorry, I don't understand the question. Well, I mean, the fact that you can ask for a delay in the schedule doesn't mean that you'll get it. That's correct, Your Honor. You're asking to a judge's discretion. Correct, correct. I mean, assuming LAP could also agree and consent and they can submit it to the court, much like we do in the U.S., as I understand it, it's a similar procedure. About the protective order, is it limited, for example, to just say only counsel can review it, unless it's offered for admission at the trial in the U.K., or does it indicate that you can share it with your client, which seems to me to be their concern? We can share it with a list of individuals, one of which is our client and the attorneys, but everybody has to sign an agreement. Whoever I have produced these documents to, all the lawyers there, I have received a paper from them stating that they agree to the confidentiality agreement and protective order. I understand your adversary's statement to say that their concern was that you would show it to other people. The point that she emphasized was that the lawyers looking at these things would help the lawyers to devise a trial strategy. And that's the whole point. We're trying to prepare for our trial and prove our damages case. That's why we came here. And the fact that LAP is now saying here, well, why don't you go and ask for these documents in England, is almost incredible. Well, but given the limited purpose that you want it for, why is it necessary to share it with your client at this point anyway? Because the client is helping the lawyers prepare the case. I mean, they have to go through – the client provided consulting services and management services to LAP. The client is in the best position to know, you know, who XYZ Business might be in relation to LAP Technologies, which was a, you know, a technology investment, for example. It's going to be very difficult for the lawyers to ascertain whether XYZ Company had any relation to whether the CMS actually improved, you know, the profits of LAP with respect to any given business. Let me ask you one quick question. If there was a protective order, assuming a stay was conditioned on a protective order, that said for the time being you couldn't share it with your client, would that in any way enable you to comply with the discovery order? Would it interfere with it? I mean, you know, the – what you have to do in England. So you're saying basically for the time being until the appeal is decided whether it would affect preparation of the case? Right. And also you have this obligation that you described in the UK. I think it would, Your Honor, because, you know, we have to go through leads and investigations on who's who. And based on that, I mean, what I understand is there's going to be – after the standard disclosure, there's going to be a next step of the discovery, which are witness statements. And basically each side submits statements from their witnesses. And so – So you're saying that the lawyers can't understand, in many cases, the significance of the documents without having them – without the help of the clients interpreting them. Correct. The clients know what was going on. Exactly. Yeah. More forensic accounts, for example. Correct. I'm sorry? Was that a question or are you – No. Okay. Anything more? Your Honor, I had a whole speech, but unless you have any more questions – Thank you very much. Thank you. That ends the motions calendar for today.